Anderson, J.,
delivered the opinion of the court.
The testator, A. B. Nichols, left three children, James L., George A., and Sally E., who had intermarried with Holmes Erwin, to whom he had made unequal advancements, which he ascertains and determines by his will. The advancements to James he puts at $20,000; to George, at $10,000; and to Sally, at $5,000. And then devises to Sally Erwin real estate in Lynch-burg for life, remainder in fee to her daughter Mary and to any other heirs of her body, which he values at $15,000. This devise he declares “is designed to make her portion equal to her brother’s, James L. Nichols.” He then gives to his eldest son, James, the benefit and entire profits of his Harris plantation and other lands mentioned; and provides, that should he die without legal issue (he was then thirty-eight years of age, and unmarried), the lands given to him should *287 go to the children of George and Sally. He then gives to his son George the use, profits and benefit of the home or Webb tract of land, and other lands mentioned, “to have and to hold, and take the benefit of the profits of the same during his life, and then to the heirs of his body forever.” He says his object and intention is, that no landed property shall be put in market and sold during the life of his children; but they are not restricted iu regard to the personal effects of his estate, which he says are to be equally divided between his three legatees. After putting his estimate 'upon the personal effects, good bonds, &c., which he says perhaps may amount to over fifty thousand dollars, but about which he thinks there is great doubt, from causes which he assigns; and after designating certain articles of property which are to be considered as part of the freehold and as belonging to his son George’s tract, he says: “ The real estate devised, or the profits, to George and Sally, I think will equalize their portions with James L. Nichols’ previous advancements.” And then immediately adds: “I regard James L. Nichols’ transfer of the lands heretofore mentioned rather in excess of his proper proportion; still I am unwilling to hamper him with debt.”
Hpon the case thus made by the record, we have to determine whether an account of the advancements, and of the bequests and devises hereinbefore recited, shall be brought into the distribution of the pei’sonal estate. And that is the only question.
By the express terms of the will, the devise to Sally Erwin was designed to make her portion equal to her brother’s, James L. Nichols. And the testator also declares that the devises he made to George and Sally he thinks will equalize their portions with James L. *288 Nichols’ previous advancements. The equalization of' the advancements was therefore effected by the testahimself in the disposition he made of the real estate, and they were not left open, to be equalized out of the personal estate, or to be charged to account..
It only remains therefore to inquire: Is James L. Nichols chargeable, in the distribution of the personal estate, with the real estate devised to him for life, with contingent remainder in fee to the children of George Nichols and Sally Erwin, as an offset against his distributive share of the personal estate? Was such the intention of the testator ? He says expressly, that the personal estate shall be equally divided between his three legatees. His language is peculiar. He says, “the persona] effects of my estate, which are to be-equally divided between the three legatees afore specified.” Did he mean to say that there should be an equal division of the personal effects of his estate between his three legatees, by adding thereto the value-of the interest in his real estate which he had given to his son James, and charging him therewith? If he had so intended, he could easily have said it. But he did not. If he had, what account was to be taken of the valuable interest in the same real estate which he had contingently devised to the children of George- and Sally? Was no account to be taken of that? He does not expressly embrace the said real estate in the division of the personal estate, but directs an equal division of the latter, without any qualifying words. Nor can his intention to embrace it be implied by what is expressed, but rather the contrary, for, in the same paragraph, he acknowledges the inequality, but declines to change it. He says: “I regard James L. Nichols transfer of the lands, heretofore mentioned^ rather in excess of his proper (equal) portion (he will *289 not change it), “ still I am unwilling (he says) to hamper him with debt.” He directs an equal division of his personal estate between his three legatees, with the fact present to his mind, that the disposition he had made of his real estate in favor of his son James was rather in excess of an equal share to him, but adheres to an equal division of the personal estate notwithstanding, and assigns as a reason, that he is not willing “to hamper him with debt.” So far from an implication arising from the language of the will, that whilst the testator directs his personal estate shall be equally divided between his three legatees, he did not mean , that, but meant that James should not get an equal share of the personal estate, but should be charged with the value of the interest given to him in the real estate, and that his division of the personal estate should be less than an equal share by the value of his interest, or excess of equality in the real estate, we think the contrary is clearly implied.
The testator no where applies the same language of equality to the division of his estate generally, that he applies to the division of his personal estate. It does not seem to have been his aim to conform to exact equality in the division of his estate. In regard to the charges for advancements to his children, to which he seems to have special but not exclusive reference, he says I shall endeavor to approximate (not equality, but) as near as I think right and proper in all cases, and I trust it will be satisfactory to all parties interested, as my decision is final, and cannot be altered.” James was his eldest child, and had been unfortunate in business. He doubtless considered his losses, and that he would get much less of his estate at his death than his brother and sister; and that he bad given to him only a right to the rents and profits of the land *290 during his life, and that it would then go, in the event of his dying without issue, which he may have thought to be probable, to George and Sallie’s children, and that after all the inequality would be inconsiderable. And it was one of his objects in making a will, that he might make some donations, which he could not make without a will. "We regard the declaration made in a previous clause of the will to the effect, that no monies shall be required to be paid over to legatees until their claims are equalized, relied upon by appellant’s counsel, as having reference to the equalization of the purchases which they might make at the sales, and consequently not at all militating against the foregoing construction given to other clauses of the will. We think there is no error in the decree, and are of opinion to affirm it with costs.
Decree arrirmed.